1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIE DWAYNE CLARK,                    Case No. 1:21-cv-01081-SKO (PC)

12                  Plaintiff,

                                             **FINDINGS AND RECOMMENDATIONS
13        v.                                 TO DISMISS THE ACTION FOR FAILURE
                                             TO STATE A COGNIZABLE CLAIM FOR
14   ANDREW CIOLLI, et al.,                  RELIEF**

15                  Defendants.              Clerk of the Court to Assign District Judge

16

17       Plaintiff Willie Dwayne Clark is proceeding *pro se* and *in forma pauperis* in this civil

18   action brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of*

19   *Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Currently before the Court is Plaintiff's

20   complaint filed on July 12, 2021.

21       **I.      SCREENING REQUIREMENT**

22       The Court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. §

24   1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

25   malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

26   relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C.

27   § 1915(e)(2)(B)(ii).

28   //

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    *BIVENS* ACTIONS FOLLOWING *ZIGLAR V. ABASSI*

Based on the case *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), courts have found that individuals may sue federal officials for damages for constitutional violations under certain circumstances. A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250 (2006). The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. *Baiser v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing *Schearz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000). A *Bivens* claim is only available against officers in their individual capacities. *Morgan v. U.S.*, 323 F.3d 776, 780 n.3 (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th

Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988).

Plaintiff is a federal prisoner proceeding under *Bivens*. To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The Supreme Court has recently made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," and has "consistently refused to extend *Bivens* to any new context or new category of defendants. *Ziglar v. Abbasi*, ––– U.S. –––, 137 S. Ct. 1843, 1857 (2017) (citations omitted); *Egbert v. Boule*, ––– U.S. –––, 142 S. Ct. 1793, 1797 (2022) (The Court reiterated that "a cause of action under Bivens is 'a disfavored judicial activity'").

If a claim presents a new context in *Bivens*, the court must consider whether there are special factors counseling against extension of *Bivens* into this area. *Abassi*, 137 S. Ct. at 1857. The Supreme Court's precedents "now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. *Id*. at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*.

Traditionally, courts applied a two-part test to determine the appropriateness of extending a *Bivens* cause of action. First, the Court examined whether the claim arises in a "new context" or involves a "new category of defendants." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

Second, if the claim arises in a new context, the Court assessed whether there exists any "special factors counselling hesitation in the absence of affirmative action by Congress." *Abassi*, 137 S. Ct. at 1857 (internal quotations omitted).  The Supreme Court recently reformulated this test. In *Egbert v. Boule*, 142 S. Ct. at 1803, the Supreme Court determined that these two steps can be distilled to one single inquiry; that is, "whether there is any reason to think that Congress might be better equipped to create a damages remedy." Further, the Court specified that if there is even one rational reason to defer to Congress to afford a remedy, then "a court may not recognize a *Bivens* remedy." *Id.* The Court concluded that a rational reason for deference to Congress will exist "in most every case." *Id.*

Finally, the presence of an alternative remedial structure counsels against extending *Bivens* to a new cause of action. The Court may not even determine the adequacy of the alternative remedy, as this is a task left to Congress. *Egbert v. Boule*, 142 S. Ct at 1807. Indeed, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. This remains true "even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id*. (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint names Warden Andrew Ciolli, Acting Captain Joshua Brown, Health Services Administrator Christopher Hanson and "S.I.S. Technician" Moses Jimenez, who are all employed at the United States Penitentiary in Atwater (USP Atwater), as defendants. (Doc. 1 at 2.)

In his first claim for relief, Plaintiff alleges a violation of his Eighth Amendment rights and contends that on November 16, 2020, he was transferred to USP Atwater. Upon arrival, Plaintiff was tested for COVID-19 and was notified 14 days later of the negative results. A second test on or about November 30, 2020, also produced negative results. On December 9, 2020, following the two negative test results, Plaintiff was moved to a general population housing unit. On December 18, 2020, USP Atwater went on lockdown status. On December 21, 2020,

Plaintiff was tested a third time, and eight days later was notified he was COVID-19 positive. Plaintiff contends he did not have COVID-19 before his transfer to USP Atwater and his "health status was known." Plaintiff contends "staff" at USP Atwater "acted negligently by moving [him] into a unit where they did not know any of the inmates status that was prehoused there." Plaintiff contends the COVID-19 virus "can only come into the prison two ways and all inmates that are incoming are quarantined for 21 days, or more, and required to have two negative test results." Plaintiff alleges that before December 21, 2020, "none of the inmates were tested for COVID-19." Because COVID-19 is "a deadly virus," Plaintiff contends "its not right to not test inmates" and that the "decision was made by the admin. Staff, Warden Ciolli and HAS Hanson." Plaintiff contends his mental health has deteriorated, he has developed severe insomnia and is depressed. Plaintiff states he is "treated as if [he] has leprosy." He suffers from ongoing symptoms including the loss of smell and taste, blurry vision, headaches, fatigue and joint pain, and an inability to exercise due to asthma and shortness of breath. Finally, Plaintiff contends his request for an inhaler has been denied.

In his second claim for relief, Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights and contends that on or about April 19, 2021, he received legal mail "from the Denver District Court," clearly marked "to be opened in [his] presence." Instead, the piece of mail was "opened outside of [his] presence and copied." He contends he can prove it "to be a fact." On May 1, 2021, Plaintiff contends legal mail was sent to him from a law firm; it too was clearly marked and was opened prior to his "signing the log." Plaintiff contends he "made it clear to the officer that this was the second time he has opened [Plaintiff's] legal mail," and that Plaintiff intended to file a complaint. Plaintiff asserts the officer then "seized" the envelope and documents and advised Plaintiff that "he had to test them for drugs." The officer refused to perform the test in Plaintiff's presence over Plaintiff's objections. Plaintiff contends he is "sure the results were negative because [he] was never taken to the S.H.U nor has any investigation been conducted." Plaintiff states he has yet to receive the mail taken from him. Plaintiff contends the "deliberate acts proves how Officer Moses Jimenez violated [his] constitutional rights." In the "Injury" portion of the form complaint for this claim, Plaintiff states: "I am filing my post-

conviction relief motions pro se. I don't know what those legal documents state. I am already being denied access to state related materials, so I am at a disadvantage. To have my constitutional rights violated continuously is arbitrary and unfair."

In his third claim for relief, Plaintiff alleges violations of his First and Eighth Amendment rights and contends that on May 1, 2021, after he informed Defendant Jimenez that he would filing a grievance against him for opening Plaintiff's mail outside of Plaintiff's presence, Jimenez wrote a disciplinary report for using another inmate's phone "1 hour and 15 minutes prior to our interaction." Plaintiff contends Jimenez "has his coworkers going over and beyond pat searching and cell searching" Plaintiff on a regular basis. Before that date, Plaintiff alleges he had "avoided all confrontations and interactions with all correctional officers" and had not received "any disciplinary reports since [he] was admitted into federal custody." Plaintiff contends that Jimenez "was digging for a reason to write" Plaintiff up because Jimenez "was upset" about Plaintiff intention to file a grievance. Plaintiff contends he is being "harassed by [Jimenez's] coworkers" who are "racially profiling and discriminating against" him. Plaintiff contends he lives "in fear of them going a step further and causing" him bodily harm.

By way of relief, Plaintiff seeks to be transferred to another institution with "better health care staff and services," punitive damages in the sum of $3,000,000 and "all the court costs and fees paid along with any attorney fees that apply."

**IV.   DISCUSSION**

### 1.   Plaintiff's First Claim

Plaintiff contends his Eighth Amendment rights were violated by USP Atwater officials and staffs' failure to protect him from contracting the COVID-19 virus in December of 2020.

While the Supreme Court has recognized a *Bivens* remedy in the context of the Eighth Amendment—*Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment)—Plaintiff's claim is different.

District courts in the Ninth Circuit and elsewhere have found that *Bivens* Eighth Amendment claims based on prison officials' alleged failure to protect prisoners from COVID-19

arise in a "new context," and courts have declined to extend *Bivens* to that context. *See, e.g.*, *Stine v. Von Blanckensee*, No. 20-cv-00489, 2020 WL 8024369 at *4 (D. Ariz. Dec. 22, 2020) ("Although the Supreme Court may have assumed for analytical purposes that a *Bivens* cause of action exists under the Eighth Amendment for failing to protect an inmate, *see Farmer v. Brennan*, 511 U.S. 825 (1994), it has never specifically concluded that such a cause of action exists.") (parallel citations omitted); *Hand v. Young*, No. 20-cv-00784, 2021 WL 3206833 at *3, 6 (E.D. Cal. July 29, 2021) (finding Plaintiff's Eighth Amendment claims alleging that Defendants "fail[ed] to evaluate Plaintiff for early release on home confinement which exposed Plaintiff to the risk of contracting COVID ... present a new *Bivens* context" and "are similar in context to the claims for which the Supreme Court rejected an expansion of *Bivens* liability in Abbasi"), R&R adopted, 2021 WL 5234429 (E.D. Cal. Nov. 10, 2021); *see also Walker v. United States*, No. 21-cv-1881, 2022 WL 1472872 at *3-5 (M.D. Pa. May 10, 2022) (finding claim that "Defendants exhibited deliberate indifference towards [the plaintiff's] conditions of confinement, causing the spread of COVID-19 ... presents a new context because" the "Supreme Court has never extended *Bivens* to claims against federal prison officials regarding conditions of confinement"); *Gater v. Carvajal*, No. 20-cv-00146, 2021 WL 868433 at *1, 3 (E.D. Ark. Feb. 23, 2021) (declining to recognize *Bivens* claims alleging that "Defendant Correctional Counselor ... failed to protect [the plaintiff prisoner] from harm and retaliated against him for filing grievances against her by transferring him" to a different unit "where several inmates had COVID-19 and intended to harm him"), R&R adopted, 2021 WL 865274 (E.D. Ark. Mar. 8, 2021), summarily aff'd, No. 21-1928, 2021 WL 4959015 (8th Cir. Aug. 4, 2021); *Patino v. Emerson*, No. 20-cv-708, 2020 WL 5417617 at *2 (W.D. Mich. Sept. 10, 2020) (declining to recognize *Bivens* remedy, in part because plaintiffs were seeking immediate release from detention and therefore could pursue a habeas claim under 28 U.S.C. § 2241 as an alternative remedy).

One court reasoned that the following special factors counseled against extending the *Bivens* remedy:

> Plaintiff's claims implicate[] significant separation of powers concerns vis-à-vis prison administration and implying a new *Bivens* remedy for such claims would undoubtedly impose a large burden on

> the judiciary and prison officials. ... Significantly, Plaintiff's claim[s] arise from the prison administration's considerations for early release and decisions related to effective management of prison populations in light of the COVID pandemic.

*Hand*, 2021 WL 3206833 at \*7. Courts have also noted the availability of alternative remedies, such as seeking injunctive relief or release from custody via a writ of habeas corpus. *See, e.g.*, *Stine*, 2020 WL 8024369 at \*5; *Hand*, 2021 WL 3206833 at \*5.

The Court should decline to imply a new *Bivens* remedy for Plaintiff's Eighth Amendment failure to protect from contracting COVID-19 claim. The Court finds special factors merit hesitation and recommends declining to find implied *Bivens* claims because Congress is better equipped to create a damages remedy in this new context. *Egbert*, 142 S. Ct. at 1803. Consequently, Plaintiff has failed to state a cognizable claim. Since this is a deficiency that cannot be cured by amendment, the Court concludes that granting leave to amend would be futile.

**2. Plaintiff's Second Claim**

Plaintiff asserts his rights under the "Fourth and Fourteenth Amendments" were violated by Jimenez's actions concerning Plaintiff's incoming mail in May of 2021.

The Court initially notes that Plaintiff's second claim is unrelated to his first claim. A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2).

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at \*2 (E.D. Cal., Oct. 29, 2013), aff'd sub nom. *K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791

1  (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

2  2007). *See also* Fed. R. Civ. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if:

3  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

4  to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

5  (B) any question of law or fact common to all defendants will arise in the action").

6      Plaintiff's first claim names "Admin. Staff, Warden Ciolli and HAS Hanson" as

7  Defendants and relates to actions taken in December 2020. Plaintiff's second claim names only

8  Defendant Jimenez and concerns actions taken in May 2021. These claims are not properly

9  asserted in a single action because the first claim and second claim do not arise from the same

10  transaction, occurrence, or series of transactions or occurrences, nor is there a question of law or

11  fact common to all defendants. Therefore, this claim violates Federal Rules of Civil Procedure 18

12  and 20. Plaintiff may not pursue multiple unrelated actions in one lawsuit.

13      The Court also notes that Plaintiff references the "Fourth and Fourteenth Amendments"[1]

14  in his second claim concerning his incoming mail—a piece of mail from the "Denver District

15  Court" and a piece of mail from "a law firm." Plaintiff apparently alleges that his mail was

16  subject to an illegal search and seizure in violation of the Fourth Amendment when it was opened

17  by prison personnel outside of his presence. It is well-settled that a prisoner has no reasonable

18  expectation of privacy in his cell and is not entitled to Fourth Amendment protection against

19  unreasonable searches and seizures. *See Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984); *Nakao*

20  *v. Rushen*, 766 F.2d 410, 412 (9th Cir. 1985). This analysis applies equally to an inmate's

---

[1] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The *Bivens* Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant. *Bivens*, 403 U.S. at 389, 397.

Section 1 of the Fourteenth Amendment provides: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Plaintiff's case does not involve any state action.

1  incoming mail. *See Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (holding that pre-trial

2  detainee has no reasonable expectation of privacy in cell; no Fourth Amendment violation when

3  inmate not present during search of legal materials). Thus, the issue of whether a prison official

4  can open legal materials outside of an inmate's presence is more appropriately considered under

5  the First Amendment. *See, e.g.*, *Treglia v. Cate*, No. C 11-3438 LHK (PR), 2012 WL 3731774,

6  *4 (N.D. Cal. Aug. 28, 2012) Insofar as Plaintiff alleges a violation of the Fourth Amendment, he

7  fails to state a claim because Plaintiff has no reasonable expectation of privacy regarding his

8  incoming legal mail. The Court will consider Plaintiff's claim in the First Amendment context.

9      Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52

10  F.3d 264, 265 (9th Cir. 1995) (per curiam); *see also Nordstrom v. Ryan*, 856 F.3d 1265, 1271 (9th

11  Cir. 2017). Plaintiff is advised that prisoners "have a protected First Amendment interest in

12  having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849

13  F.3d 1204, 1211 (9th Cir. 2017) (concluding the protected First Amendment interest extends to

14  civil legal mail). Consistent with the First Amendment, prison officials may, (1) require that mail

15  from attorneys be identified as such and (2) open such correspondence in the presence of the

16  prisoner for visual inspection. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Sherman v.

17  MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981). *Cf. Mann v. Adams*, 846 F.2d 589, 590–91 (9th

18  Cir. 1988) (per curiam) (concluding that mail from public agencies, public officials, civil rights

19  groups and news media may be opened outside the prisoners' presence in light of security

20  concerns). "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal

21  mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir.

22  1998); *see also Hayes*, 849 F.3d at 1211 (explaining the First Amendment does not prohibit

23  opening mail from the courts outside the recipient's presence). A prison need not treat all mail

24  sent to government agencies and officials as legal mail. *See O'Keefe v. Van Boening*, 82 F.3d 322,

25  326 (9th Cir. 1996). Plaintiff's mail from the "Denver District Court" is not legal mail. *Keenan*,

26  83 F.3d at 1094. Plaintiff's mail from "a law firm" is legal mail. *Wolff*, 418 U.S. at 576-77.

27      As noted above, the Supreme Court has only recognized a *Bivens* remedy in the context of

28  the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment

prohibition against unreasonable searches and seizures); *Davis,* 442 U.S. 228 (Fifth Amendment gender-discrimination); *Carlson,* 446 U.S. 14 (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The Supreme Court has not recognized a *Bivens* remedy in the context of the First Amendment. The Ninth Circuit has also refused to extend a *Bivens* remedy to a claim under the First Amendment. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (citing *Iqbal,* 556 U.S. at 675; *Bush v. Lucas*, 462 U.S. 367, 368 (1983)).

The Court finds that the "special factors" analysis required by *Abassi* counsels against extending *Bivens* into this area. Plaintiff has available to him the BOP's grievance process in an effort to resolve the claims raised in the complaint. The Court declines to extend a *Bivens* cause of action to Plaintiff's First Amendment legal mail claim. *See Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend *Bivens* cause of action for First Amendment retaliation claim); *Lee v. Matevousian*, 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at \*4 (E.D. Cal. Oct. 26, 2018) (declining to find implied *Bivens* cause of action for First Amendment retaliation and denial of access to court claims); *see also Railey v. Ebbert*, 407 F. Supp. 3d 510, 522 (M.D. Pa. 2019) ("[A]s other courts have recognized, special factors exist counseling against the expansion of *Bivens* to First Amendment claims regarding interference with mail, such as Congress' decision to not provide a damages remedy for certain violations and the financial burden on federal agencies resulting from litigation"); *Sharp v. Numsen*, 2022 WL 834421, at \*4-9 (W.D. Wis. Mar. 21, 2022) (declining to extend *Bivens* to a First Amendment claim concerning alleged screening of inmate's mail); *Smadi v. True*, 2021 WL 2853262, at \*3-7 (S.D. Ill. July 8, 2021) (same).

The Court should decline to imply a new *Bivens* remedy for Plaintiff's First Amendment legal mail claim. The Court finds special factors counsel hesitation because Congress is better equipped to create a damages remedy in this new context and recommends declining to find implied *Bivens* claims. Consequently, Plaintiff has failed to state a cognizable claim. Since this deficiency cannot be cured by amendment, the Court concludes that granting leave to amend would be futile.

### 3. Plaintiff's Third Claim

Plaintiff contends Jimenez retaliated against him for filing a grievance regarding Jimenez's treatment of Plaintiff's incoming mail by filing a false disciplinary report in May 2021. This claim too is unrelated to Plaintiff's first claim.

For the reasons set forth above— the claims do not arise from the same transaction, occurrence, or series of transactions or occurrences, nor is there a question of law or fact common to all defendants—the Court finds this claim violates Federal Rules of Civil Procedure 18 and 20. For the reasons given below, the Court will recommend the claim be dismissed on another basis.

The Supreme Court has not recognized a *Bivens* remedy under the First Amendment and the Ninth Circuit has also refused to extend a *Bivens* remedy to a claim under the First Amendment. *Reichle v. Howards*, 566 U.S. at 663 n.4 (citing *Iqbal,* 556 U.S. at 675; *Bush v. Lucas*, 462 U.S. 367, 368 (1983)); *see also Baptiste v. Zunkeir*, No. 5:19-cv-00025-VBF-JDE, 2019 WL 4543113, at *4-5 (C.D. Cal. Apr. 1, 2019) (declining to find an implied *Bivens* cause of action for a First Amendment retaliation claim).

The Court finds that the "special factors" analysis required by *Abassi* counsels against extending *Bivens* into this area. Plaintiff has available to him the BOP's grievance process to resolve the claims raised in the complaint. The Court declines to extend a *Bivens* cause of action to Plaintiff's First Amendment retaliation claim. *See Buenrostro v. Fajardo*, 770 F. App'x at 808 (declining to extend *Bivens* cause of action for First Amendment retaliation claim); *Lee v. Matevousian*, 2018 WL 5603593, at *4 (declining to find implied *Bivens* cause of action for First Amendment retaliation and denial of access to court claims).

The Court should decline to imply a new *Bivens* remedy for Plaintiff's First Amendment retaliation claim. The Court finds special factors counsel hesitation because Congress is better suited to create a damages remedy in this new context and recommends declining to find implied *Bivens* claims. Consequently, Plaintiff has failed to state a cognizable claim. Since this is a deficiency that cannot be cured by amendment, the Court concludes that granting leave to amend would be futile.

//

1

## V.     ORDER AND RECOMMENDATIONS

2      Based on the foregoing, **IT IS HEREBY ORDERED** that the Clerk of the Court

3  randomly assign a district judge to this action.

4      Further, **IT IS HEREBY RECOMMENDED** that Plaintiff's complaint be dismissed

5  without leave to amend for failure to state a claim.

6      These Findings and Recommendations will be submitted to the district judge assigned to

7  this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

8  Findings and Recommendations, a party may file written objections with the Court. The

9  document should be captioned, "Objections to Magistrate Judge's Findings and

10 Recommendations." Failure to file objections within the specified time may result in waiver of

11 rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

12 *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14 IT IS SO ORDERED.

15 Dated:   __December 6, 2022__              ___/s/ *Sheila K. Oberto*___

16                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28